UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| ILKA RIOS, ALISON BUSH, JOYCE CULLER, PAMELA STEWART-MARTINEZ, and WINIFRED COULTON, | ECF Case |
| | Case No.: 16-cv6448 (KMW) |
| on behalf of themselves and all other persons who reside in Bronx County, New York, and who have been denied without due process of law an equal opportunity to participate in the political processes, to cast a meaningful vote for a candidates of their choice, or to hold their elected representatives accountable, who are similarly situated, | **COMPLAINT** |
| | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| Plaintiffs, | |
| -against- | |
| STANLEY KALMON SCHLEIN, THE EXECUTIVE COMMITTEE OF THE BRONX DEMOCRATIC COUNTY COMMITTEE, and UNIDENTFIED CO-CONSPIRATORS 1-100, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Williams v. Rhodes, 393 U.S. 23, 31 (1968).

"Who are to be the electors . . .?  Not the rich more than the poor; not the learned more than the ignorant; not the haughty heirs of distinguished names, more than the humble sons of obscure and unpropitious fortune.  The electors are to be the great body of the people . . ."  The Federalist, No. 57 (Cooke ed. 1961), at 385.

Plaintiffs, Ilka Rios, Alison Bush, Joyce Culler, Pamela Stewart-Martinez, and Winifred Coulton ("Plaintiffs") -- on behalf of themselves and all other persons who reside in Bronx County, New York, and who have been denied without due process of law an equal opportunity to participate in the political processes, to cast a meaningful vote for a candidates of their choice, and/or to hold their elected representatives accountable, who are similarly situated -- allege as their Complaint against Stanley Kalmon Schlein, the Executive Committee of the Bronx Democratic County Committee, and Unidentified Co-Conspirators 1 through 100 ("Defendants") the following:

## PRELIMINARY STATEMENT

1. Defendants have disenfranchised the people of the Bronx for years through a perverse scheme primarily involving the unlawful and fraudulent alteration of the designating petitions used to place Democratic candidates for public office onto the primary election ballot ("Petitions"). Specifically, *after* voters sign the Petitions filed by the Bronx Democratic County Committee ("County Committee"), Defendants unlawfully alter the County Committee's Petitions by adding the names and addresses of the candidates for one of the more than one-thousand members of the County Committee ("Committee Member").

2. By that unlawful alteration of the County Committee's Petitions, Defendants fraudulently appoint, instead of democratically petition to designate, to the primary election ballot all of the candidates for each of the more than one-thousand Committee Member positions. Many of those candidates are unaware that Defendants have misappropriated their identity as a candidate for Committee Member and they are deprived of any notice of such candidacy. Hundreds of such fraudulently appointed candidates for Committee Member fail to attend the County Committee's post-primary meeting and become manufactured "vacancies."

3. By unlawfully voting hundreds of such fraudulently manufactured vacancies and by fraudulently appointing the remaining Committee Members, Defendants exercise complete, perpetual, and authoritarian control over the composition of the County Committee, its Executive Board, its platform, and its entire slate of candidates in every primary election in every race in the entire Bronx, all without the knowledge or consent of a single voter. In the Bronx, the power to control the Democratic primary ballot is the same as the power to appoint every single elected official in the entire Bronx.

4. Defendants' scheme denigrates the County Committee from a democratically elected, representative body into an arbitrarily appointed, authoritarian farce that produces elected officials who govern us like they know they do not actually derive their power from the people of the Bronx. Defendants' scheme has completely uncoupled the machine of government from the will of the people and disenfranchised the people of the Bronx for decades.

5. The linchpin of Defendants' entire fraudulent scheme is the man they call a "judge-maker," the man they call "a kingmaker,"[1] the Defendant Stanley Kalmon Schlein. It turns out there is a lot of money in stealing from the poor if you make it a volume business.

6. No wonder we are governed by a series of multi-generational dynasties that rule the Bronx like personal fiefdoms. No wonder we are denied equitable access to quality public education, to safe and affordable housing, to public investments in job-creation, to our waterfront and other natural resources, and to any of our community's wealth. No wonder half of our community live at or below the poverty line and reside in the high-rise housing developments where the City warehouses its poor. No wonder the Bronx is saddled with the waste-transfer

---

[1] Sam Roberts, *Bronx Lawyer Is a Power Behind Several Thrones*," July 26, 2005, New York Times, http://www.nytimes.com/2005/07/26/nyregion/metrocampaigns/bronx-lawyer-is-a-power-behind-several-thrones.html?_r=0, last visited August 14, 2016.

stations, power plants, and other pollution-intensive resources no one else wants, all without any consideration of the health and well being of our children.  No wonder we live in the poorest urban county and the poorest Congressional district in the United States.  No wonder our community suffers from disproportionately high rates of obesity, diabetes, asthma, heart disease and other preventable ailments.  No wonder our community suffers.

7.     Schlein and his Unidentified Co-Conspirators have stolen more wealth from the people of the Bronx than can be quantified, much less counted, and have caused more needless suffering by untold millions than could ever be remedied by money.

8.     Whatever else results from this Action, this Court's intervention in the Bronx's next election -- the September 13, 2016 primary election -- is the Bronx's only hope of holding our first free and fair election in decades.  The disenfranchised people of the Bronx must be given back our inalienable right to participate in the government that rules us, to elect our own public officials and to hold them accountable to our needs.  We need the right to vote, the right to each have a voice in government and to have our collective voice speak of realizing our shared dreams for our community.  Only then might our children build for themselves a more just and loving world than the one ruled by Stanley Schlein and his co-conspirators.  Only then might the Bronx no longer be playing at democracy.

9.     Accordingly, Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and costs and attorneys' fees, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, for violations of Plaintiff's rights to Free Speech, Equal Protection and Due Process under the First, Fifth, and Fourteenth Amendments to the United States Constitution; pursuant to the Voting Rights Act, 52 U.S.C. § 10101 *et seq*.; and pursuant to New York common law.

**THE PARTIES**

10. Ilka Rios is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 79th Assembly District. Ms. Rios is a first-generation American who was born and raised in the South Bronx. She is an active member of her Community Education Council and helps to run a food assistance program through the school system. Knowing that she must set an example for her children, Ms. Rios recently completed her B.A. and is applying to graduate programs to become a school counselor. Ms. Rios is also a woman of color who is of Panamanian descent.

11. Alison Bush is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District. She still resides where she grew up, in the Soundview section of the Bronx. Ms. Bush recently retired from a distinguished twenty-seven year career as a New York City Corrections Officer and served two terms as an appointed representative on Community Board 9, from 2009 until 2013. Ms. Bush is also a woman of color who is of African American descent.

12. Joyce Culler is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District. Ms. Culler is a sixth-generation resident of the southeast Bronx communities of Hunt's Point and Longwood, where she and her husband have raised their family. In 1972, Ms. Culler became a family worker at PS48 in Hunt's Point, the first African American to hold that position. She has held leadership positions in numerous tenant coalitions and neighborhood advocacy organizations, including as the president of People on Point, the sergeant-at-arms for the New York City Police Department's 41st Precinct Council Committee, and the chairperson of the Housing and Land Use Committee of Community Board 2. Ms. Culler is also a woman of color who is of African American descent.

13. Pamela Stewart-Martinez is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 87th Assembly District.  Ms. Stewart-Martinez resides in the Unionport section of the Bronx, where she has raised her seven children, is one of the Co-Presidents for the Citywide Council on Special Education, and is a Democratic candidate for member of the Assembly for the 87th Assembly District. Ms. Stewart-Martinez is also a woman of color who is of African American descent.

14. Winifred Coulton is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 79th Assembly District.  She has lived for more than thirty-nine years in the Soundview section of the Bronx, where she raised her nine children.  Ms. Coulton is a past-president of her Community Education Council and a recipient of the Legacy Award and remains active as a volunteer for community events offered through Bronx River housing complex and the Community Affairs officers of the New York City Police Department's 42nd and 43rd Precinct, for example.  Ms. Coulton is also a woman of color who is of African American descent.

15. Defendant Stanley Kalmon Schlein ("Schlein") is a natural person who resides and is domiciled in the State of New York, Bronx County.  Schlein is an attorney admitted to practice law before the courts of the State of New York and can be served with process at his publicly-filed address of record, 481 King Avenue, Bronx NY  10464.

16. Defendant the Executive Committee of the Bronx Democratic County Committee is the governing body of the Bronx Democratic County Committee, a purportedly deliberative body comprising supposedly elected representatives, an entity that was formed and exists pursuant to New York Election Law, Article 2.

17. Defendants Unidentified Co-Conspirators 1 through 100 (the "Co-Conspirators"), being fictitious names, are persons whose full names and true identities are unknown to Plaintiffs without discovery but who are all believed to work and/or reside in the Bronx.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiffs' claims arising under 42 U.S.C. § 1983 and the First, Fifth and Fourteenth Amendment to the Constitution of the United States.

19. This Court has original subject matter jurisdiction, pursuant to 52 U.S.C.A. § 10101(d), over Plaintiffs' claims arising under the Voting Rights Act, 52 U.S.C.A. § 10302.

20. This Court has supplemental subject matter jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' claims arising under the laws of the State of New York and City of New York, because those state-law claims are so related to Plaintiffs' original-jurisdiction federal claims that they form part of the same case or controversy under Article III of the Constitution of the United States.

21. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) in that Defendants reside in the State of New York and at least one defendant is located in this district, and because the events giving rise to Plaintiffs' claims occurred in this district.

## FACTS RELATING TO PLAINTIFFS' CLAIMS

22. Defendants' scheme comprises three known categories of unlawful, fraudulent activity. First, Defendants' conspired to appoint instead of petition to designate all of the candidates for County Committee Members. Second, Defendants conspired to fraudulently control the vote of the Bronx County Democratic Committee, a supposedly elected and representative body, the composition of its Executive Committee, the party's entire platform and

7

its entire slate of candidates for every public office in the Bronx, without any input or control from any voter. Third, Defendants conspired to forge voters' signatures by wholesale tracing, to fraudulently back-date the Petitions filed by the County Committee, and to use that fraudulent material to disenfranchise all voters who wished to cast a meaningful vote for someone other than the County Committee candidate, or at least to have their preferred candidate placed onto the primary ballot and be part of the political conversation.

### A. Defendants' conspired to appoint arbitrarily instead of petition democratically all of the candidates for County Committee Members.

23. The foundation of Defendants' scheme is the pervasive, unlawful and fraudulent alteration of the designating Petitions used to place Democratic candidates for public offices and party positions onto the primary election ballot.

24. Pursuant to New York Election Law, a Petition must identify the name and address of each candidate as well as the office or party position sought. A voter's signature on a Petition is effectively a vote to have all of the candidates named on that Petition placed onto the primary ballot. If a voter signs more than one candidate's Petition, the latter-dated signature is invalidated. If a sufficient number of Democratic voters sign a candidate's Petition, that candidate is placed onto the primary ballot as a Democratic candidate.

25. Consistent with that statutory scheme, Defendant Executive Committee endorses a candidate for every public office up for election in the Bronx in any given year. The Executive Committee groups its endorsed slate of candidates by the geographic jurisdictions they seek to represent and prints the candidates' names on one or more of the Executive Committee's Petitions.

26. The very last of the various judicial, legislative, and executive offices listed on each of the County Committee's Petitions is for "Member of the Democratic County Committee from the ___ Election District."

27. Pursuant to New York Election Law Article 2, there can be at least two members of the County Committee elected in the primary election every two years from each of the Bronx's more than six-hundred Election Districts. Elected members who affirmatively decline the position after receiving a notice letter, or who fail to attend the post-primary meeting, are statutory "vacancies" that are filled by a majority of the five-person Vacancy Committee. The County Committee elects the Executive Committee that determines the party's platform and entire slate of candidates.

28. The Executive Committee is supposed to circulate the County Committee's Petitions in the appropriate jurisdictions during the statutory time period to solicit the signatures of registered Democrats, bind the signed pages of the Petitions into volumes, and file those bound Petitions with the Board of Elections ("BOE") to place the named candidates onto the primary ballot.

29. Instead, Defendants solicit voter signatures on Petitions that fail to identify the name or address of any candidate for Member of the County Committee. Defendants then fraudulently alter the County Committee's Petitions, *after* voters sign them, by using pre-printed stickers to add to the Petitions the names and addresses of all of the candidates for County Committee member and then by writing the Election District by hand.[2] By that unlawful alteration of the Petitions, Defendants fraudulently appoint instead of democratically petition to

---

[2] e.g., "Member of the Democratic County Committee from the _53_ Election District".

9

designate the entirety of the County Committee candidates without the knowledge, much less consent, of a single voter.

**B. Defendants conspired to fraudulently control the Bronx County Democratic Committee and to dictate the composition of its Executive Committee, platform, and slate of candidates, without the consent of any voter.**

30. Defendants fraudulently appoint as candidates to the County Committee the misappropriated identities of unsuspecting Bronx voters. The identities of those fraudulently appointed County Committee candidates are hidden from voters to avoid giving anyone notice that their name is being used as such a candidate, that several County Committee candidates died or otherwise left the Bronx years ago, and that more than two-thirds of the County Committee candidates so-far examined are listed at knowingly incomplete or incorrect addresses. Defendants then send the statutory notices of the County Committee meeting and membership to those knowingly incomplete or incorrect addresses in a manner calculated not to be received.

31. Third, because of Defendants' scheme, half or more of the County Committee members do not to attend the post-primary County Committee meeting and therefore become a statutory "vacancy." Defendants then unlawfully vote those hundreds of manufactured "vacancies" instead of filling them by appointment.

32. By unlawfully voting those fraudulently manufactured vacancies and by fraudulently appointing the County Committee's remaining votes, Defendants exercise complete and authoritarian control over the composition of the Bronx Democratic County Committee's Executive Board, its platform, and its entire slate of candidates in every primary election in every race in the entire Bronx.

33. In the Bronx, the primary election is the only dispositive election because virtually every public office for decades has been won by the Democratic candidate.

Defendants' absolute power to control the Democratic primary ballot is therefore also the absolute power to appoint every single elected official in the entire Bronx, from district leaders to judges to state legislators.

34. Defendants' scheme therefore has completely disenfranchised the people of the Bronx in every election for decades.

35. The linchpin of Defendants' entire fraudulent scheme is Defendant Stanley Kalmon Schlein, the kingmaker. Schlein presides over the meetings of the County Committee. Schlein is the attorney who is responsible for preparing the County Committee's Petitions and filing them with the BOE. Schlein is the contact person to correct deficiencies, such as an incorrect or incomplete address, for the County Committee's candidates, including the fraudulently appointed candidates for County Committee member. Schlein is the first-named member of the Committee to Appoint Vacancies for all of the County Committee's candidates for every public office in the Bronx up for election this year and every year for decades.

36. Defendants' victims include Plaintiffs, whose claims are typical of the claims of the Proposed Class.

**C. Defendants conspired to commit wholesale forgery and document fraud to disenfranchise all voters who wished for candidates in addition to the County Committee candidate to appear on the primary ballot and participate in the political conversation.**

37. Defendants conspired to forge voters' signatures onto the County Committee's Petitions by wholesale tracing, adding hundreds or thousands of forged signatures to page after page of fraudulent Petition sheets.

38. Defendants also conspired to fraudulently back-date the County Committee's Petitions, including the wholesale forgeries. Because a voter may sign only one such Petition, by

11

back-dating a voter's forged signature, County Committee is able to invalidate that voter's authentic but latter-dated signature on a rival candidate's Petition.

39. Defendants also forge the name and misappropriate the identities of Bronx voters to use as subscribing witnesses to the fraudulent Petition sheets. For example, Defendants forged the signature of Plaintiff Ms. Coulton onto the fraudulent Petitions that County Committee filed in 2014 in the 87th Assembly District.

40. Defendants use that fraudulent Petitions to disenfranchise all voters who wished to cast a meaningful vote for someone other than the County Committee candidate, or at least to have their preferred candidate placed onto the primary ballot and be part of the political conversation.

41. Defendants' fraudulent Petitions sheets bolster the County Committee's Petition and create a disincentive to other candidates even to try to vet those Petitions. If such a candidate does review the County Committee's Petitions, the fraudulent material is added in a way that allows it to be invalidated but plausibly deniable.

42. County Committee's Petitions, however, are dripping with indicia of obvious fraud and speak for themselves.

**D.      Plaintiffs have no adequate state-law remedy.**

43. The Election Law simply does not provide a remedy to address defendants wrongdoing. First, the only persons with standing to challenge any aspect of a Petition is an aggrieved candidate or an objector, i.e., a registered voter who lives in the subject district who files a pro forma general objection and then detailed, line-by-line specification of every objection to every signature. Such an objector or aggrieved candidate may commence a special proceeding to present evidence of fraud or invalidity.

44. Plaintiffs, whose identities were misappropriated as manufactured vacancies for the County Committee or whose signatures were forged as the purported subscribing witness to fraudulent Petition sheets, have no standing under the Election Law to challenge any aspect of the offending Petition.

45. Further, any one objector or aggrieved candidate could challenge only the fraudulently appointed candidates to be a County Committee Member in that objector's Election District. To meaningfully challenge the fraudulent composition of the County Committee, a different objector or aggrieved candidate would have to commence a special proceeding for each of the Bronx's more than 600 Election Districts.

46. Further still, the statutory challenge process occurs in an extraordinarily compressed timeframe because of the need to identify and remedy any invalid Petitions in time for the impending election. It therefore is impossible to vet every subscribing witness to a Petition much less the authenticity of its signatures.

47. Still further, although the challenge process is theoretically available to all candidates, as a practical matter it is the County Committee that challenges all of its rivals. Only twice in recent history has an opposition candidate challenged the County Committee petition. In both cases, the special referee refused to allow any questions, much less evidence, relating to the fraudulent alteration of the County Committee Petitions by adding the names of the County Committee Member candidates.

48. Even if more than six-hundred objectors commenced a consolidated challenge to all of the candidates for County Committee, the only available remedy is merely to invalidate the designating Petition. That remedy is wholly inadequate.

49. Finally, it is noteworthy that in all of the Bronx's special proceeding challenges under the Election Law for decades, defendant Schlein has represented County Committee and behaved with all of the decency and decorum one would expect of a person at the heart of this scheme.

## COUNT I
(42 U.S.C. § 1983)
(Fifth and Fourteenth Amendment - Equal Protection Clause)

50. Plaintiff incorporate by reference each and every allegation contained in this Amended Complaint.

51. Because in the Bronx the primary effectively controls the choice, Defendants' scheme has debased and diluted the weight of the votes of all of the people of the Bronx just as effectively as by wholly prohibiting the free exercise of the franchise.

52. At a minimum, Defendants' scheme gives the County Committee a decided advantage over any opposition candidates struggling to become part of the political conversation, thereby denying voters the right to cast their votes effectively.

53. Compared to others similarly situated -- i.e., the citizens of every other borough and community -- Plaintiffs have been selectively mistreated.  It is noteworthy that the Defendants' victims are overwhelmingly people of color.

54. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to be beyond calculation, plus reasonable attorneys' fees and costs.

55. Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct

and deliberately assumed or acquiesced in such risk.  The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.  Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT II
(42 U.S.C. § 1983)
(Fifth and Fourteenth Amendment - Procedural Due Process)

56. Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

57. The Due Process Clause requires that there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied in the electoral process.

58. Here, as a result of Defendants' scheme, every election for years or decades in the Bronx has been so pervasively unfair as to require a federal remedy under the Due Process Clause.  That profound unfairness is so far-reaching as to necessitate a federal court's interference.  Defendants' scheme had dispositive impact on the outcome of the Bronx's elections and impacted the casting of Plaintiffs' own votes.

59. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to be beyond calculation, plus reasonable attorneys' fees and costs.

60. Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct

and deliberately assumed or acquiesced in such risk. The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights. Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT III
(42 U.S.C. § 1983)
(Fifth and Fourteenth Amendment Substantive Due Process)

61. Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

62. The Due Process Clause also protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense.

63. The right to vote is a fundamental right within the substantive due process framework because it is a right that is implicit in the concept of ordered liberty. Any intrusion on the right to vote must be narrowly tailored to serve a compelling state interest.

64. Here, Defendants' willful conduct undermines the organic processes by which candidates or positions are selected, completely disenfranchising Plaintiffs without any process of law.

65. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to be beyond calculation, plus reasonable attorneys' fees and costs.

66. Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct

and deliberately assumed or acquiesced in such risk.  The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.  Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

### COUNT IV
(42 U.S.C. § 1983)
(First Amendment right to free speech)

67. Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

68. Petition circulation constitutes core political speech, because it involves interactive communication concerning political change.

69. Further, persons whose identity was used as a manufactured vacancy on the County Committee --  such as Plaintiffs Ms. Rios, Ms. Bush, and Ms. Culler  -- were absolutely deprived of any opportunity to attend the County Committee meetings, discuss issues, and vote for candidates as an elected member of a representative body.  Those acts are all core speech, as is voting on public policy matters coming before a legislative body..

70. Defendants' scheme prevents, and at least profoundly chills, the people of the Bronx's core First Amendment right of political expression

71. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to be beyond calculation, plus reasonable attorneys' fees and costs.

72. Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their

wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct and deliberately assumed or acquiesced in such risk.  The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.  Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT V
(52 U.S.C. § 10101 *et seq*.)
(Voting Rights Act §2 - vote dilution scheme)

73.     Plaintiffs incorporate by reference each and every allegation contained in this Complaint.

74.     Defendants' scheme has created in the Bronx electoral law, practice, and structure that interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by voters of color to elect their preferred representatives.

75.     The appropriate remedy for rectifying the discrimination caused by Defendants' scheme should undo results of past discrimination as well as restore Plaintiffs' franchise and prevent future inequality of treatment.

76.     The Court's power to shape an appropriate remedy is not confined to named individual Defendants, but extends as far as sovereign state itself.

77.     Accordingly, Plaintiffs are entitled to a declaration that Defendants' practice of altering Petitions after they are signed by voters, manufacturing vacancies through fraud, forging voter signatures and misappropriating of voters' identities, and autocratically subverting the County Committee's democratic processes, are unlawful and in violation of Plaintiffs' rights. Plaintiffs are entitled also to an injunction enjoining Defendants from engaging in further

fraudulent and unlawful acts; intervening in the September 13, 2016 primary election to remove from that primary ballot all candidates whose name was placed on the ballot through a County Committee Petition and to provide a mechanism whereby such candidates and other qualified Democratic voters may be placed onto the September 13, 2016 primary ballot; appointing federal monitors for the September 2016 primary election and subsequent elections; and such other and further relief as is just and proper.

**Pursuant to the Seventh Amendment to the Constitution of the United States and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

(1) that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants, be ordered as follows: (i) enjoining Defendants from altering Petitions after they are signed by voters, manufacturing vacancies through fraud, forging voter signatures and misappropriating of voters' identities, and autocratically subverting the County Committee's democratic processes; (ii) ordering the removal from that September 13, 2016 primary ballot of all candidates whose name was placed on that ballot through a County Committee Petition; (iii) directing a mechanism whereby such candidates and other qualified Democratic voters may be placed onto the September 13, 2016 primary ballot; and (iv) appointing federal monitors for the September 13, 2016 primary election and subsequent elections;

(2) awarding Plaintiffs compensatory damages in an amount to be determined at trial but believed to be incalculable and punitive damages in an amount to be determined at trial;

(3) awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums;

(4) awarding Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. §§ 1983 and 1988; and

(8) awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: Bronx, New York
August 15, 2016

                                                      LAW OFFICE OF DONALD R. DUNN, JR.

By: _____
Donald R. Dunn, Jr. (DD0069)

441 East 139th Street
Bronx, New York 10454
347-270-1863
Donald@drdunnlaw.com

20