UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ILKA RIOS, ALISON BUSH, JOYCE CULLER,
PAMELA STEWART-MARTINEZ, WINIFRED
COULTON, SHARAN FERNANDEZ,
CHARLENE PRICE, and ROXANNE
DELGADO,

on behalf of themselves and all other persons who
reside in Bronx County, New York, who are
similarly situated,

                    Plaintiffs,

        -against-

STANLEY KALMON SCHLEIN, RUBEN
DIAZ, JR., JEFFREY DINOWITZ, MICHAEL
R. BENEDETTO, CARL E. HEASTIE,
AURELIA GREENE, ANNABEL PALMA,
MARCOS A. CRESPO, VANESSA L. GIBSON,
MARISSA SOTO, ANTHONY PEREZ,
VENANCIO "BENNY" CATALA, JOHN
ZACARRO, ANGEL GAUD, YVES FILIAS,
LEILA MARTINEZ, UNIDENTIFIED CO-
CONSPIRATORS 1 to 100, and as necessary
parties THE BOARD OF ELECTIONS IN THE
CITY OF NEW YORK and THE NEW YORK
STATE BOARD OF ELECTIONS,
                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.: 16-cv6448 (KMW/jlc)

**FIRST AMENDED COMPLAINT**

**PLAINTIFFS DEMAND
TRIAL BY JURY**


"No right is more precious in a free country than that of having a voice in the
election of those who make the laws under which, as good citizens, we must live.
Other rights, even the most basic, are illusory if the right to vote is undermined."
Williams v. Rhodes, 393 U.S. 23, 31 (1968).


"Who are to be the electors . . .?  Not the rich more than the poor; not the learned
more than the ignorant; not the haughty heirs of distinguished names, more than
the humble sons of obscure and unpropitious fortune.  The electors are to be the
great body of the people . . ."  The Federalist, No. 57 (Cooke ed. 1961), at 385.

Plaintiffs, Ilka Rios, Alison Bush, Joyce Culler, Pamela Stewart-Martinez, Winifred Coulton, Sharan Fernandez, Charlene Price, and Roxanne Delgado ("Plaintiffs") -- on behalf of themselves and all other persons who reside in Bronx County, New York, who are similarly situated -- as their Amended Complaint, allege the following:

## PRELIMINARY STATEMENT

1.       Defendants have disenfranchised the people of the Bronx for years, if not decades, through a scheme to denigrate the Bronx Democratic County Committee ("County Committee") from a democratically elected, representative body of more than two-thousand members into an arbitrarily appointed, authoritarian farce of three or four hundred people comprising Defendants, Defendants' co-conspirators and other devotees, and some innocent community members who believe they were invited rather than elected and who have no idea they are supposed to govern the Democratic party in the Bronx.

2.       The foundation of Defendants' perverse scheme is the unlawful and fraudulent alteration of the Designating Petitions -- i.e., bound volumes of sheets bearing registered voters' signatures beneath the name(s), office(s) sought, and address(es) of the candidate(s) in support of whom the voters are signing -- used to place candidates onto the primary ballot.

3.       *After* voters sign the Designating Petitions filed by the Bronx Democratic County Committee ("County Committee"), Defendants unlawfully alter the County Committee's Designating Petitions by adding the names and addresses of the candidates for Member of the County Committee.

4.       By that unlawful alteration of the County Committee's Designating Petitions, Defendants fraudulently appoint, instead of democratically petition to designate, themselves and those who owe fealty to them to perpetual power while intentionally leaving hundreds of

potential Member positions vacant. Further, most of the supposed candidates for County Committee Member are completely unaware that Defendants have misappropriated their identity; many have moved out of the Bronx, died, or are otherwise engaged. Defendants use incomplete or incorrect addresses for at least half of the candidates for to intentionally deprive those candidates of their right to receive the mailed notice of their candidacy and of the meeting of the County Committee to which they were unknowingly elected.

5. Pursuant to Article 2 of the New York Election Law, the County Committee is responsible for governing the affairs of the Democratic party in Bronx County. Defendants' scheme to manufacture "vacancies" and appoint lackeys therefore gives Defendants the absolute power to control all of the Members who show up to the biennial County Committee meeting and to simply disappear more than one thousand democratically elected Members.

6. Defendants use their scheme to exercise complete, perpetual, and authoritarian control over the composition of the County Committee, its Executive Board, the delegates to the judicial convention, and the party's platform and entire slate of candidates in every primary election in the Bronx, all without the knowledge or consent voters. In the Bronx, the power to control the Democratic primary ballot is the same as the power to appoint every single elected official in the entire Bronx. Defendants' scheme has completely uncoupled the machine of government from the will of the people and disenfranchised the people of the Bronx for decades.

7. No wonder we are governed by a series of multi-generational dynasties that rule the Bronx like personal fiefdoms. No wonder we are denied equitable access to quality public education, to safe and affordable housing, to public investments in job-creation, to our waterfront and other natural resources, and to any of our community's wealth. No wonder half of our community live at or below the poverty line and reside in the high-rise housing developments

where the City warehouses its poor. No wonder the Bronx is saddled with the waste-transfer stations, power plants, and other pollution-intensive resources no one else wants, all without any consideration of the health and well being of our children. No wonder we live in the poorest urban county and the poorest Congressional district in the United States. No wonder our community suffers from disproportionately high rates of obesity, diabetes, asthma, heart disease and other preventable ailments. No wonder our community suffers.

8. It turns out there is a lot of money in stealing from the poor if you make it a volume business. Defendant Stanley Schlein and his co-conspirators have stolen more wealth from the people of the Bronx than can be quantified, much less counted, and have caused more needless suffering by untold millions than could ever be remedied by money.

9. This Court's intervention in the Bronx's next election -- the September 13, 2016 primary election -- is the Bronx's only hope of holding our first free and fair election in decades. The disenfranchised people of the Bronx must be given back our inalienable right to participate in the government that rules us, to elect our own public officials and to hold them accountable to our needs. We need the right to vote, the right to each have a voice in government and to have our collective voice speak of realizing our shared dreams for our community. Only then might our children build for themselves a more just and loving world than the one ruled by Stanley Schlein and his co-conspirators. Only then might the Bronx no longer be playing at democracy.

10. Accordingly, Plaintiffs seek declaratory and injunctive relief, compensatory and punitive damages, and costs and attorneys' fees, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988; 52 U.S.C. § 10101 *et seq*.; and pursuant to 18 U.S.C. §§ 1961-1968, for violations of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

**THE PARTIES**

11.     Plaintiff Ilka Rios is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 79th Assembly District.  Ms. Rios is a first-generation American who was born and raised in the South Bronx.  She is an active member of her Community Education Council and helps to run a food assistance program through the school system.  Knowing that she must set an example for her children, Ms. Rios recently completed her B.A. and is applying to graduate programs to become a school counselor.  Ms. Rios is also a woman of color who is of Panamanian descent.

12.     Plaintiff Alison Bush is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District.  She still resides where she grew up, in the Soundview section of the Bronx.  Ms. Bush recently retired from a distinguished twenty-seven year career as a New York City Corrections Officer and served two terms as an appointed representative on Community Board 9, from 2009 until 2013.  Ms. Bush is also a woman of color who is of African American descent.

13.     Plaintiff Joyce Culler is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District.  Ms. Culler is a sixth-generation resident of the southeast Bronx communities of Hunt's Point and Longwood, where she and her husband have raised their family.  In 1972, Ms. Culler became a family worker at PS48 in Hunt's Point, the first African American to hold that position.  She has held leadership positions in numerous tenant coalitions and neighborhood advocacy organizations, including as the president of People on Point, the sergeant-at-arms for the New York City Police Department's 41st Precinct Council Committee, and the chairperson of the Housing and Land Use Committee of Community Board 2.  Ms. Culler is also a woman of color who is of African American descent.

14. Plaintiff Pamela Stewart-Martinez is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 87th Assembly District. Ms. Stewart-Martinez resides in the Unionport section of the Bronx, where she has raised her seven children, is one of the Co-Presidents for the Citywide Council on Special Education, and is a Democratic candidate for member of the Assembly for the 87th Assembly District. Ms. Stewart-Martinez is also a woman of color who is of African American descent.

15. Plaintiff Winifred Coulton is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 79th Assembly District. She has lived for more than thirty-nine years in the Soundview section of the Bronx, where she raised her nine children. Ms. Coulton is a past-president of her Community Education Council and a recipient of the Legacy Award and remains active as a volunteer for community events offered through Bronx River housing complex and the Community Affairs officers of the New York City Police Department's 42nd and 43rd Precinct, for example. Ms. Coulton is also a woman of color who is of African American descent.

16. Plaintiff Sharan Fernandez is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District. Ms. Fernandez is also a woman of color who is of African American descent.

17. Plaintiff Charlene Price is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 85th Assembly District. Ms. Price is also a woman of color who is of African American descent.

18. Plaintiff Roxanne Delgado is a natural person who resides and is domiciled in the State of New York, Bronx County, in the 80th Assembly District. Ms. Delgado first became interested in local politics during the so-called Bronx DA's dirty deal, when the leaders of the

Bronx Democratic County Committee undemocratically appointed a wildly unpopular district attorney as a judge and then undemocratically appointed his hand-picked successor. That experience motivated her to study the election law and to run for district leader this year, her first foray into politics.

19.    Defendant Stanley Kalmon Schlein ("Schlein"), a/k/a "judge-maker" a/k/a "kingmaker,"[1] is the linchpin of Defendants' conspiracy. Schlein's actual residence is unknown, his only known office is his car, and the address he uses for all known purposes is an apparently abandoned house tucked away at the edge of City Island, Bronx, i.e., 481 King Avenue, Bronx, where he can be served with process. Schlein is believed to be domiciled in New York.

20.    Defendant Ruben Diaz, Jr. "(Diaz Jr.") is the current Bronx Borough President and the former Member of the New York State Assembly ("Assembly") from the 85th Assembly District ("AD"). Diaz Jr. can be served with process at the Office of the Bronx Borough President, 851 Grand Concourse, 3rd Floor, Bronx, New York 10451.

21.    Defendant Jeffrey Dinowitz ("Dinowitz") is the current Chair of the County Committee, a member of the 2014 and 2016 Vacancy Committee, and the current Assembly Member from the Bronx's 81st AD. Dinowitz can be served with process at his district office, 3107 Kingsbridge Avenue, Bronx, NY 10463.

22.    Defendant Michael R. Benedetto ("Benedetto") is the current Assembly Member from the Bronx's 82nd AD, current Treasurer of the Executive Committee, and 2014 member of the Vacancy Committee. Benedetto can be served with process at his district office, 3602 E. Tremont Ave., Suite 201, Bronx, NY 10465.

---

[1] Sam Roberts, *Bronx Lawyer Is a Power Behind Several Thrones*," July 26, 2005, New York Times, http://www.nytimes.com/2005/07/26/nyregion/metrocampaigns/bronx-lawyer-is-a-power-behind-several-thrones.html?_r=0, last visited August 14, 2016.

23. Defendant Carl E. Heastie ("Heastie") is the current Speaker of the Assembly, representing the Bronx's 83rd AD, and the former Chair of the Executive Committee of the Bronx Democratic County Committee (the "Executive Committee"). Heastie can be served with process at his district office, 1446 East Gun Hill Road, Bronx, NY 10469.

24. Defendant Aurelia Greene ("Greene") is the current Deputy Bronx Borough President, a position to which she was appointed by Diaz, Jr., former Assembly Member from the Bronx's 77th AD, and former member of the Vacancy Committee. Greene can be served with process at the Office of the Bronx Borough President, 851 Grand Concourse, 3rd Floor, Bronx, New York 10451.

25. Defendant Annabel Palma ("Palma") is the current is the current New York City Council Member from the Bronx's 18th City Council District and a 2014 and 2016 member of the Vacancy Committee. Palma can be served with process at her district office, 1041 Castle Hill Avenue Bronx, New York 10472.

26. Defendant Marcos A. Crespo ("Crespo") is the current Assembly Member from the Bronx's 85th AD and current Chair of the Executive Committee. Crespo can be served with process at his district office, 1551 Watson Avenue, Bronx, NY 10472.

27. Defendant Vanessa L. Gibson ("Gibson") is the current New York City Council Member from the Bronx's 16th City Council District, the former Assembly Member from the Bronx's 77th AD, and a member of the 2014 and 2016 Vacancy Committee. Gibson can be served with process at her district office, 1377 Jerome Avenue Bronx, New 10452.

28. Defendant Marissa Soto ("Soto") is a member of the 2014 and 2016 Vacancy Committee, the current counsel to the Executive Committee who assists Schlein with the final

binding of the County Committee's Designating Petitions. Soto can be served with process at her offices at 1937 Williamsbridge Road, Bronx, NY, 10461.

29.     Defendant Anthony Perez ("Perez") is the current Executive Director of the County Committee and one of the co-conspirators who assists Schlein with the final binding of the County Committee's Designating Petitions. Perez can be served with process at the County Committee's office, 1640 Eastchester Road, Bronx, NY 10461.

30.     Defendant Venancio "Benny" Catala ("Catala") is the current First Vice Chair of the Executive Committee. Catala can be served with process at the County Committee's office, 1640 Eastchester Road, Bronx, NY 10461.

31.     Defendant John Zacarro ("Zacarro") is the chief of staff of a non-party member of the City Council and can be served with process at his public office, 1070 Southern Boulevard, Bronx, NY 10459.

32.     Defendant Angel Gaud ("Gaud") is a natural person who resides and is domiciled in the state of New Jersey and whose principal place of business is at 900 Rogers Place, Bronx, NY 10459.

33.     Defendant Yves Filias ("Filias") is the First Vice President of The Bronx Young Democrats. Filias can be served with process at the County Committee's office, 1640 Eastchester Road, Bronx, NY 10461.

34.     Defendant Leila Martinez ("Martinez") is a natural person who resides and is domiciled in the state of New York, Bronx County, and whose principal place of business is at the Bronx Elections Board, 1780 Grand Concourse, Bronx, NY 10457.

35. Defendants Unidentified Co-Conspirators 1 through 100 (the "Co-Conspirators"), being fictitious names, are persons whose full names and true identities are unknown to Plaintiffs without discovery but who are all believed to work and/or reside in the Bronx.

36. Necessary-party defendant Board of Elections for the City of New York ("NYC BOE") can be served with process at 32 - 42 Broadway, 7th Floor, New York, NY 10004.

37. Necessary-party defendant New York State Board of Elections ("State BOE") can be served with process at 40 North Pearl Street, Suite 5, Albany, New York 12207-2729.

38. The Executive Committee of the Bronx Democratic County Committee is the governing body of the Bronx Democratic County Committee and an unincorporated association formed and existing pursuant to New York Election Law, Article 2. The Executive Committee is not a party to this action because it is Defendants' corrupt enterprise within the meaning of the Racketeer Influenced & Corrupt Organization Act, 18 U.S.C. §§ 1961-1968.

## JURISDICTION AND VENUE

39. This Court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, over Plaintiffs' claims arising under 42 U.S.C. §§ 1983, 1985, and 1988 and the First, Fifth and Fourteenth Amendment to the Constitution of the United States.

40. This Court has original subject matter jurisdiction, pursuant to 52 U.S.C.A. § 10101(d), over Plaintiffs' claims arising under the Voting Rights Act, 52 U.S.C.A. § 10302.

41. This Court has original subject matter jurisdiction, pursuant to 18 U.S.C. § 1964, over Plaintiffs' claims arising under the Racketeer Influenced & Corrupt Organization Act, 18 U.S.C. §§ 1961-1968.

42. This Court has supplemental subject matter jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' claims arising under the laws of the State and City of New York, because

those state-law claims are so related to Plaintiffs' original-jurisdiction federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

43. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) in that Defendants reside in the State of New York and at least one defendant is located in this district, and because the events giving rise to Plaintiffs' claims occurred in this district.

## FACTS RELATING TO PLAINTIFFS' CLAIMS

44. Defendants' scheme involves at least four categories of unlawful fraud, forgery, and other criminal activity.

45. First, Defendants conspire to unlawfully alter the County Committee's Designating Petitions, after voters have signed, by adding the names of the candidates for Member of the County Committee and by fraudulently back-dating the voters' signatures, as part of their scheme to denigrate the County Committee from a democratically elected, representative body into a farce maintained by fraud and criminal conduct.

46. Second, Defendants conspire to misappropriate the identity of unsuspecting Bronx residents as candidates for Member of County Committee, to deprive those victims of the statutory notice mailed to them about becoming a Member of the County Committee. Defendants thereby deprive those victims of any opportunity to attend, participate, or vote as a democratically elected Member of the County Committee and also deprive those victims' constituents of any opportunity to be represented on the County Committee.

47. Third, Defendants conspire to forge Designating Petitions by wholesale tracing of voters' signatures. Defendants then conspire to forge the names and signatures of unsuspected Bronx residents as the supposed witnesses who attest, under penalty of perjury, that page after page of forgeries are authentic.

11

48. Fourth, Defendants conspire to tamper with evidence and witnesses, to suborn perjury, and to commit other abuses of process in furtherance of their unlawful scheme.

**A. Defendants' conspiracy to control the Bronx's County Committee, Judicial Convention, and elected offices.**

49. The foundation of Defendants' scheme is the pervasive, unlawful and fraudulent alteration of the County Committee's Designating Petitions for the primary election ballot.

50. Pursuant to New York Election Law, a Designating Petition must identify the name and address of each candidate as well as the office or party position sought. A voter's signature on a Petition is effectively a vote to have all of the candidates named on that Petition placed onto the primary ballot. If a voter signs more than one candidate's Petition, the latter-dated signature is invalidated. If a sufficient number of Democratic voters sign a candidate's Petition, that candidate is placed onto the primary ballot as a Democratic candidate.

51. The very last on the list of various judicial, legislative, and executive offices listed on each of the County Committee's Petitions is for "Member of the Democratic County Committee from the ___ Election District."

52. Pursuant to New York Election Law Article 2, the County Committee runs the Democratic party's affairs in the Bronx, including endorsing candidates for every public office in every election in the Bronx, appointing vacancies, and selecting the judicial delegates who choose the Bronx's judges.

53. There can be at least two members of the County Committee elected in the primary election every two years from each Election District in the Bronx. Each of the Bronx's Assembly Districts contain sixty or more Election Districts, so the County Committee if fully elected comprises more than two-thousand Members.

54.    The County Committee is supposed to circulate the County Committee's Designating Petitions during the statutory time period to solicit the signatures of registered Democrats, bind the signed pages of the Designating Petitions into volumes, and file those bound Petitions with the NYC BOE to place the named candidates onto the primary ballot.

55.    Instead, Defendants solicit voter signatures on Designating Petitions that fail to identify the name or address of any candidate for Member of the County Committee.  Defendants then fraudulently alter the County Committee's Designating Petitions, *after* voters sign them, by using pre-printed stickers to add to the Petitions the names and addresses of all of the candidates for County Committee member and then by writing the Election District by hand. By that unlawful alteration of the Designating Petitions, Defendants fraudulently appoint instead of democratically petition to designate the entirety of the County Committee candidates without the knowledge, much less consent, of a single voter.

56.    In addition to the substantial number of vacancies that Defendants leave for County Committee Member,  County Committee, Defendants fraudulently appoint as candidates for County Committee Member the misappropriated identities of hundreds of unsuspecting Bronx voters ("Straw Candidates").  Many of those Straw Candidates moved out of the Bronx or even dies years ago.  The identities of those Straw Candidates are hidden from voters to avoid giving anyone notice that their name is being used, and further concealed by placing the Straw Candidates' names on the primary ballot in an Election District far from their home, church, and anywhere else people know their names.

57.    Further, Defendants use knowingly outdated, incomplete, or incorrect addresses for the Straw Candidates.  By far the most common address deficiency is the omission of apartment numbers from the address of persons living in multiple dwellings of fifty or more

units. Defendants then mail the Straw Candidates their statutory notice of the County Committee meeting in a manner calculated not to be received, in furtherance of their fraudulent conspiracy.

58. Defendants' scheme to disappear Members by manufacturing vacancies reduces the number of County Committee Members at the biennial meeting from more than 2,00 democratically elected Members to about 300 to 400 autocratically appointed Members.

59. Further still, half of those Members are the politicians, lackeys, and the other Co-conspirators who have been instructed to follow the meeting's pre-arranged script. The other Members are innocent, and predominantly elderly, people who believe they were invited instead of elected and have no understanding that they have any say much less a vote in the proceedings. To bolster the illusion of actual attendance, the County Committee meeting is held at the same place and same time as the judicial convention and meeting of county leaders.

60. Defendants then run the County Committee meeting according to the script prepared by Defendants. One or more of the elected officials will open the meeting and speak about the party's platform, then Schlein presides over the meeting by drawing out the names of no more than 100 vacancies being filled by the Vacancy Committee. By the time everyone in the room has long grown weary of the recitation of names and are eager to proceed to the meeting, the remaining 900 "vacancies" go unnoticed.

61. In a farcical and completely orchestrated reading of scripts containing names of candidates to nominate and second, Schlein calls for a voice vote of "aye," brushes past a muttered call for "nays," then invariably declares that the "ayes have it." In this manner, Schlein controls every member appointed to the Executive Committee or other position of leadership.

62. Once the farcical County Committee meeting is adjourned to a delicious dinner and open bar, Defendants go into another room to hold the judicial convention. Schlein then

presides over the judicial convention, a similarly scripted farce used to place judges onto the supreme court in the Bronx.

63.     Defendants have used their fraudulently obtained power to divest the County Committee of any real decision making power or authority and to place virtually all of the County Committee's power into the hands of Defendants' corrupt enterprise, the Executive Committee of the Bronx Democratic County Committee ("Executive Committee").

64.     The Executive Committee's power includes, for example, causing the County Committee to prepare and file Designating Petitions for each of its endorsed slate of incumbents and other candidates to have them placed onto the primary ballot.

65.     The County Committee candidate has won the primary election in virtually every election in the Bronx for decades.  The winner of the Democratic primary has won the general election in virtually every election in the Bronx for decades.

66.     Defendants' scheme to control the County Committee therefore gives Defendants the power to effectively appoint every supposedly elected public official in the Bronx.

67.     The linchpin of Defendants' entire fraudulent scheme is Stanley Schlein.  Schlein presides over the meetings of the County Committee.  Schlein is the attorney who is responsible for preparing the County Committee's Designating Petitions and filing them with the NYC BOE.  Schlein is the contact person to correct deficiencies, such as an incorrect or incomplete address, for the County Committee's candidates, including the Straw Candidates for County Committee Member.  Schlein is the first-named member of the Committee to Appoint Vacancies for all of the County Committee's candidates for every public office in the Bronx up for election this year and every year for decades.

68.     For years or decades, Defendants have used their scheme to extort bribes and other illicit payments, to prevent independent candidates from holding public office, and to steal from the people of the Bronx.

69.     Defendants' scheme almost came to an end in 2007, when then party leader Jose Rivera fired Stanley Schlein, the architect of Defendants' conspiracy.

**B.      The "Rainbow Rebellion" Co-conspirators**

70.     Nobody puts Stanley Schlein in a corner.  Schlein approached Jose Rivera's political nemesis, Dinowitz, who had personal animosity for Jose Rivera, and within a year of being dismissed had recruited additional co-conspirators and launched a coup.

71.     Specifically, Stanley Diaz Jr., Dinowitz, Heastie, Benedetto, Greene, and Palma (collectively, the "Rainbow Rebellion Defendants") joined Schlein's County Committee conspiracy.  Lead by Diaz Jr., and assisted by Schlein, the Rainbow Rebellion Defendants conspired to oust Rivera and regain control over the County Committee and its Executive Committee at the September, 2008 County Committee Meeting.

72.     The Rainbow Rebellion Defendants fraudulently altered the Designating Petitions in their respective Assembly Districts to a point to the county committee scores of their political allies.  They even went to court to order the County committee to book a larger venue.

73.     Masquerading as a call to arms to restore power to the people, the Rainbow Rebellion Defendants brought busloads of their hand-picked County Committee Members to the 2008 meeting.  The Jose Rivera camp ran the County Committee meeting the only way they knew how to run such a meeting, as a Stanley Schlein-scripted farce.  The Rainbow Rebellion Defendants then ran a second meeting with their hundreds of constituent Members and took control of the County Committee.

74.     The Rainbow Rebellion Defendants spewed rhetoric about restoring power to the people and called it the "Rainbow Rebellion."  Apparently, everyone was so wrapped up in the rhetoric that no one ever asked why there had never been a large turnout or actual disagreement at a County Committee Meeting before, and why there never was again.  In truth, it was merely another part of Stanley Schlein's scheme to rule the Bronx as his personal kingdom.

75.     The Rainbow Rebellion Defendants were all too happy to share that power and hoard it for themselves, installing themselves into public offices of their choosing, unable to loose an election no matter how wildly unpopular they become.

**C.     In recent elections, Defendants continued to conspire to commit wholesale document fraud, forgery, witness tampering, and other unlawful acts.**

76.     In the Bronx elections held since 2014, Defendants Schlein, Soto, Torres were the co-conspirators principally responsible for unlawfully altering the County Committee's Designating Petition sheets by adding the names of the candidates for County Committee Member after voters had signed those sheets.

77.     Schlein, the Rainbow Rebellion Defendants, and Crespo conspired to misappropriate voters' identities for use as Straw Candidates in order to maintain their grip on power and perpetuate their conspiracy.   Plaintiffs Rios, Bush, Culler, Fernandez, Price and Delgado had their identities misappropriated by Defendants and were used as Straw Candidates.

78.     Defendants also conspired to forge voters' signatures onto the County Committee's Designating Petitions by wholesale tracing, adding hundreds or thousands of forged signatures to page after page of fraudulent Designating Petition sheets.

79.     Defendants Catala and Yves Filias were the co-conspirators principally responsible for wholesale forgery by tracing of voters' signatures onto page after page of the County Committee's Designating Petition sheets.

80.     Defendants also conspired to fraudulently back-date the County Committee's Designating Petitions, including the wholesale forgeries.  Because a voter may sign only one such Designating Petition, Defendants' fraudulent back-dating works to invalidate that voter's authentic but latter-dated signature on any other candidate's Designating Petition.

81.     Defendants Gaud and Torres were the co-conspirators principally responsible for unlawfully altering the County Committee's Designating Petition sheets by adding knowingly false, fraudulent dates.

82.     Defendants Schlein, Soto, and Torres were the co-conspirators principally responsible for binding and filing fraudulent documents and knowingly misrepresenting them as authentic and valid.

83.     Defendants Zacarro, Martinez, and Gaud all committed perjury, including when asked about the accuracy of the dates on the Designating Petition sheets they witnessed.

84.     Defendants Zacarro, Martinez, Catala, and Filias all committed perjury by swearing to false affidavits on County Committee's fraudulent Designating Petition Sheets.

85.     Defendants Schlein, Soto, and Catala all suborned perjury by specifically coaching witnesses how to lie.

86.     Defendant Catala threatened witnesses to compel them to perjure themselves, including on or about July and August, 2014, when he threatened Rosella Gregg and Harry McKenize that they would no longer be allowed to work as poll watchers, and might be jailed, unless they committed perjury.

87.      Defendant Schlein threatened witnesses to compel them to perjure themselves, suborned perjury, and obstructed justice.  For example, in August 2016, Schlein suborned perjury from Angel Gaud, John Zacarro, and Leila Martinez.  Schlein and Soto also caused

material witnesses to become unavailable, for example by directing Maria Martinez, a material witness, not to come to work at the Bronx Board of Elections until after the relevant trial.

88.     Defendants also conspire to forge the name and misappropriate the identities of Bronx voters to use as subscribing witnesses to the fraudulent Designating Petition sheets. For example, Defendants forged the signature of Plaintiff Ms. Coulton onto the fraudulent Petitions that the County Committee filed in 2014 in the 87th Assembly District.

89.     Defendants sat on the Vacancy Committee further to their fraudulent scheme, to prevent anyone from learning how many vacancies were manufactured and what happened to any stolen proxy votes.

**D.     Plaintiffs have no adequate state-law remedy.**

90.     The Election Law simply does not provide a remedy to address defendants wrongdoing. First, the only persons with standing to challenge any aspect of a Petition is an aggrieved candidate or an objector, i.e., a registered voter who lives in the subject district who files a pro forma general objection and then detailed, line-by-line specification of every objection to every signature. Such an objector or aggrieved candidate may commence a special proceeding to present evidence of fraud or invalidity.

91.     Plaintiffs, whose identities were misappropriated as manufactured vacancies for the County Committee or whose signatures were forged as the purported subscribing witness to fraudulent Petition sheets, have no standing under the Election Law to challenge any aspect of the offending Petition.

92.     Further, any one objector or aggrieved candidate could challenge only the fraudulently appointed candidates to be a County Committee Member in that objector's Election District. To meaningfully challenge the fraudulent composition of the County Committee, a

different objector or aggrieved candidate would have to commence a special proceeding for each of the Bronx's more than 600 Election Districts.

93. Further still, the statutory challenge process occurs in an extraordinarily compressed timeframe because of the need to identify and remedy any invalid Petitions in time for the impending election. It therefore is impossible to vet every subscribing witness to a Petition much less the authenticity of its signatures.

94. Still further, although the challenge process is theoretically available to all candidates, as a practical matter it is the County Committee that challenges all of its rivals. Only twice in recent history has an opposition candidate challenged the County Committee Designating Petitions. In both cases, the special referee refused to allow any questions, much less evidence, relating to the fraudulent alteration of the County Committee Designating Petitions by adding the names of the County Committee Member candidates.

95. Even if more than six-hundred objectors commenced a consolidated challenge to all of the candidates for County Committee, the only available remedy is merely to invalidate the designating Petition. That remedy is wholly inadequate.

96. Finally, it is noteworthy that in all of the Bronx's special proceeding challenges under the Election Law for decades, defendant Schlein has represented County Committee and behaved with all of the decency and decorum one would expect of a person at the heart of this scheme. Schlein and Soto suborn perjury, knowingly mislead the trier of fact, and conduct frivolous challenges to any candidates who dare try to become part of the political conversation. Plaintiffs Stewart-Martin and Delgado are candidates so aggrieved.

## COUNT I
### (42 U.S.C. § 1983)
### (Fifth and Fourteenth Amendment - Equal Protection Clause)

97.     Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

98.     Because in the Bronx the primary effectively controls the choice, Defendants' scheme has debased and diluted the weight of the votes of all of the people of the Bronx just as effectively as by wholly prohibiting the free exercise of the franchise.

99.     At a minimum, Defendants' scheme gives the County Committee a decided advantage over any opposition candidates struggling to become part of the political conversation, thereby denying voters the right to cast their votes effectively.

100.     Compared to others similarly situated -- i.e., the citizens of every other borough and community -- Plaintiffs have been selectively mistreated.   It is noteworthy that the Defendants' victims are overwhelmingly people of color.

101.     Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000, plus attorneys' fees and costs.

102.     Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct and deliberately assumed or acquiesced in such risk.   The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.   Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT II
(42 U.S.C. § 1983)
(Fifth and Fourteenth Amendment - Procedural Due Process)

103.    Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

104.    The Due Process Clause requires that there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied in the electoral process.

105.    Here, as a result of Defendants' scheme, every election for years or decades in the Bronx has been so pervasively unfair as to require a federal remedy under the Due Process Clause.    That profound unfairness is so far-reaching as to necessitate a federal court's interference.    Defendants' scheme had dispositive impact on the outcome of the Bronx's elections and impacted the casting of Plaintiffs' own votes.

106.    Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000, plus attorneys' fees and costs.

107.    Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct and deliberately assumed or acquiesced in such risk.    The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.    Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT III
### (42 U.S.C. § 1983)
### (Fifth and Fourteenth Amendment Substantive Due Process)

108.    Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

109.    The Due Process Clause also protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense.

110.    The right to vote is a fundamental right within the substantive due process framework because it is a right that is implicit in the concept of ordered liberty.  Any intrusion on the right to vote must be narrowly tailored to serve a compelling state interest.

111.    Here, Defendants' willful conduct undermines the organic processes by which candidates or positions are selected, completely disenfranchising Plaintiffs without any process of law.

112.    Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000, plus reasonable attorneys' fees and costs.

113.    Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct and deliberately assumed or acquiesced in such risk.  The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights.  Because of that positive element of conscious wrongdoing and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT IV
### (42 U.S.C. § 1983)
### (First Amendment right to free speech)

114. Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

115. Petition circulation constitutes core political speech, because it involves interactive communication concerning political change.

116. Further, persons whose identity was used as a manufactured vacancy on the County Committee -- such as Plaintiffs Ms. Rios, Ms. Bush, Ms. Culler, Ms. Fernandez, Ms. Price, and Ms. Delgado -- were absolutely deprived of any opportunity to attend the County Committee meetings, discuss issues, and vote for candidates as an elected member of a representative body. Those acts are all core speech, as is voting on public policy matters coming before a legislative body..

117. Defendants' scheme prevents, and at least profoundly chills, the people of the Bronx's core First Amendment right of political expression

118. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000,, plus attorneys' fees and costs.

119. Further, the Defendants' actions, over an extended period of time and in the face of the obvious risk to Plaintiffs of severe deprivation of liberty, and their efforts to conceal their wrongdoing, is proof that the Defendants focused on the risk of their unconstitutional conduct and deliberately assumed or acquiesced in such risk. The Defendants therefore acted either with an evil and malicious intent to harm Plaintiffs or with a deliberate and callous indifference to Plaintiffs' federally protected rights. Because of that positive element of conscious wrongdoing

and the reprehensibility of the Defendants' conduct, Plaintiffs are entitled to punitive damages against the Defendants, in an amount to be determined at trial.

## COUNT V
### (52 U.S.C. § 10101 *et seq.*)
### (Voting Rights Act §2 - vote dilution scheme)

120.    Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

121.    Defendants' scheme has created in the Bronx electoral law, practice, and structure that interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by voters of color to elect their preferred representatives.

122.    The appropriate remedy for rectifying the discrimination caused by Defendants' scheme should undo results of past discrimination as well as restore Plaintiffs' franchise and prevent future inequality of treatment.

123.    The Court's power to shape an appropriate remedy is not confined to named individual Defendants, but extends as far as sovereign state itself.

124.    Accordingly, Plaintiffs are entitled to a declaration that Defendants' practice of altering Petitions after they are signed by voters, manufacturing vacancies through fraud, forging voter signatures and misappropriating of voters' identities, and autocratically subverting the County Committee's democratic processes, are unlawful and in violation of Plaintiffs' rights. Plaintiffs are entitled also to an injunction enjoining Defendants from engaging in further fraudulent and unlawful acts; intervening in the Bronx's elections to provide a mechanism whereby elections are free and fair; and such other and further relief as is just and proper.

## COUNT VI
### (18 U.S.C. §§ 1962(c) and (d))
### (Racketeer Influenced & Corrupt Organization Act)

125.    Plaintiffs incorporate by reference each and every allegation contained in this Amended Complaint.

126.    Defendants are employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce.

127.    By divesting the County Committee's lawful power and authority, giving that power to the Executive Committee, and using that Executive Committee for its unlawful and fraudulent purposes, Defendants have made the Executive Committee into its RICO enterprise.

128.    Defendants are all in positions of power and authority within the Bronx's political structure and each Defendant actively participates in the operation or management of their corrupt enterprise, the Executive Committee.

129.    Defendants' unlawful conduct includes, for example, mail fraud, 18 U.S.C. § 1961(1)(B).  Specifically, Defendants knowingly used incomplete or incorrect addresses for the mailing of the statutory notice of the Straw Candidates' election as a County Committee Member.  That mailing was in furtherance of Defendants' fraudulent scheme.

130.    Defendants' unlawful conduct includes, for example, witness tampering, 18 U.S.C. § 1512.

131.    Defendants' repeated predicate acts performed repeatedly over the last ten years are related, and amount to, or pose a threat of, continuing criminal activity.

132. Defendants' scheme is the but-for cause of the injuries to Plaintiffs' property, including their due process and free speech rights.

133. Accordingly, Plaintiffs are entitled to compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000, to treble damages, attorneys' fees and costs.

**Pursuant to the Seventh Amendment to the Constitution of the United States and Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.**

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants as follows:

(1) that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants, be enjoined in a manner determined by the Court to be reasonably necessary to destroy Defendants' criminal enterprise and restore to the people of the Bronx their rightful franchise.

(2) awarding Plaintiffs compensatory damages in an amount to be determined at trial but believed to exceed $1,000,000,000, treble damages, and punitive damages in an amount to be determined at trial;

(3) awarding Plaintiffs interest, including pre-judgment interest, on the foregoing sums;

(4)    awarding Plaintiffs their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 42 U.S.C. §§ 1983 and 1988; and

(5)    awarding Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: Bronx, New York
         August 22, 2016

LAW OFFICE OF DONALD R. DUNN, JR.


By: _____/s/_____
     Donald R. Dunn, Jr. (DD0069)

441 East 139th Street
Bronx, New York 10454
347-270-1863
Donald@drdunnlaw.com