**EXHIBIT A**

FILED  Jul 23 2014 Bronx County Clerk                                      Index Number: 260706-2014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
REVEREND VERDELL MACK, SHANIQUA          :
TURNER, AND RENEE MCKENIZE,              :     Index No. _____
                                         :
                    Petitioners,         :
                                         :
        — v —                            :     **VERIFIED PETITION TO INVALIDATE**
                                         :     **THE NOMINATING PETITION OF**
LATOYA JOYNER and THE BOARD OF           :     **LATOYA JOYNER, PURSUANT TO**
ELECTIONS IN THE CITY OF NEW YORK,       :     **ELECTION LAW § 16-102**
                                         :
                    Respondents.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Petitioners, Reverend Verdell Mack, Shaniqua Turner, and Renee McKenize (collectively, "Petitioners"), by and through their attorney, the Law Office of Donald R. Dunn, respectfully submit this Verified Petition, pursuant to Election Law § 16-102, to invalidate the designating petition of Latoya Joyner ("Joyner") as a democratic candidate for the office of Member of the New York State Assembly for the 77th Assembly District (the "Joyner Petition").

## PRELIMINARY STATEMENT

1.      The issue before this Court is whether and to what extent the Election Law and the Constitution of the State of New York allow the practice of inflating the number of apparent signatories to a designating petition by knowingly or negligently including a substantial number of invalid and fraudulent signatures ("Petition Padding").

2.      Petition Padding has a profoundly chilling effect on the democratic process because the practice creates economic disincentives and unconstitutional barriers to the free entry of grass-roots and other community-advocate candidates into the primary election process.

3.      For example, a grass-roots candidate with support from community volunteers but limited financial resources might realistically assemble and manage the human resources necessary to vet a 700 signature designating petition in the nine days the Election Law provides to prepare and file line-by-line objections.  The prospect of vetting a 2,500 signature petition, on

FILED  Jul 23 2014 Bronx County Clerk

the other hand, is daunting for all but seasoned incumbents and professional candidates, requires a candidate to divert limited resources away from advocating for that candidate's constituents and values, and is unlikely to be productive (unless, of course, the adversary engaged in substantial fraud or extreme negligence). Further, the economic disincentive created by submitting a voluminous designating petition is compounded by the possibility that a grass-roots candidate will face a challenge to their own petition and will spend their resources fighting to defend their petition from an incumbent, a professional candidate, or both,[1] rather than campaigning on behalf of their constituents.

4.      The ability of grass-roots candidates and other community advocates to participate in the primary electoral process is a critical component of the free marketplace of ideas that is an underpinning of our democratic process. For this reason, the Election Law provides that any registered voter in the community can gather as few as 500 signatures from voters in their community and be placed on the primary ballot as a candidate for the State Assembly. The ability of such candidates to get on the primary ballot with nothing but the support of a modest number of their community members forces all of the candidates to address and consider the issues advanced by grass-roots candidates, i.e., the issues of the community members for whom those candidates advocate. It is an essential democratic mechanism whereby a community of people, however they choose to identify and associate themselves, can make their voices heard and their issues and concerns part of the political discussion, even if their candidate is never elected.

---

[1] In this case, it is noteworthy that Joyner, although not an incumbent, is clearly the establishment candidate who enjoys good relationships and the support of the last two people to hold the office that Joyner now seeks.

2

FILED  Jul 23 2014 Bronx County Clerk

5.      The participation of grass-roots and other community advocate candidates in the primary electoral process informs and enriches the political discussion and ultimately results in better, more meaningful representation by elected officials.  Any disincentive to such a candidate's free entry into the electoral process renders our democratic process less meaningful and injures us all.  When that disincentive is created by fraud and dishonesty, such as by Petition Padding, it is a gross affront to our legal and moral values.  That affront is even more reprehensible where, as here, it is inflicted up on one of the poorest and most under-served communities in the nation.

6.      Petition Padding -- the knowing or negligent inclusion on a designating petition of a substantial amount of fraudulent, forged or otherwise invalid signatures -- is profoundly undemocratic and an affront to the core Constitutional and value principals of free and open participation in government and a meaningful voice for each voter.  Petition Padding is a practice that violates the Election Law and the Constitution of the State of New York.  Unfortunately, it is also a practice that permeates the Joyner Petition.

## INTRODUCTION AND OVERVIEW

7.      The Election Law provides, in this case, only seventeen days to vet a candidate's designating petition.[2]  It is, therefore, staggering that the limited investigation possible in this very short time frame has uncovered a massive and systemic fraud permeating the entire Joyner Petition.

8.      As set forth in greater detail below and in the annexed Affidavits and exhibits, Petitioners can prove that the Joyner Petition is riddled with fraud.

---

[2] This special proceeding must be commenced within fourteen days of the last day to file the petition, i.e., July 24, 2014.  See, e.g., Election Law § 16-102(2).  A special proceeding under the Election Law is commenced by Order to Show Cause and must be both served and filed by the statutory deadline and shall have precedence over all cases in all court.  See, e.g., Id. at § 16-116.

3

FILED  Jul 23 2014 Bronx County Clerk

9.      For example, each sheet of a designating petition must contain a Statement of
Witness (the "Subscribing Witness Oath"), an affidavit sworn under penalty of perjury by the
Subscribing Witness that the witness personally witnessed each signatory on the page state their
identity and sign the petition in their presence.  The Subscribing Witness Oath expressly
provides, by statute, that it "will be accepted for all purposes as the equivalent of an affidavit"
and carries the same penalties as if the witness had been duly sworn under oath, i.e., "a solemn
declaration, accompanied by swearing to God . . . that one's statement is true."  Black's Law
Dictionary, Seventh Edition.

10.      The evidence adduced to date proves that at least five Subscribing Witnesses,
corresponding to 427 of the purported signatures on the Joyner Petition, are directly linked to
fraud, perjury or forgery.  At least another three Subscribing Witnesses and 256 signatures and
are linked to numerous indicia of fraud and are very likely fraudulent and perjurious.  In other
words, the limited investigation to date definitively proves that 16% of the Joyner Petition is
fraudulent and establishes by clear and credible evidence that at least 25% of the Joyner Petition
is fraudulent.  Scores of other signatures are invalid because of alterations to signatures, dates,
addresses and the Signing Witness Statement of the Joyner Petition Sheets.

11.      It is noteworthy that the most significant Subscribing Witnesses to the Joyner
Petition are directly linked to fraud, perjury and forgery.  Numerous other Subscribing
Witnesses are implicated in executing fraudulent and perjuries Subscribing Witness Oaths,
back-dating sheets, and forging innocent voters' signatures on the Joyner Petition.

12.      Further, in at least twenty-five instances, the Subscribing Witness Oaths from the
Joyner Petition contain demonstrably fraudulent information about the identity of the
Subscribing Witness, including numerous examples of apparent misappropriation of an

4

FILED  Jul 23 2014 Bronx County Clerk

unwitting voter's identity to witness signatures that are, in fact, forgeries. Such acts, if proven true, are not only undemocratic and a flagrant violation of the Election Law, they likely are criminal.[3]

13.    The use of forged and fraudulent Subscribing Witness Oaths implicates persons with control over and responsibility for the distribution, collection, review and/or binding of the Joyner Petition. The fraudulent Subscribing Witness Oaths also establish a link between the fraud and Joyner. Joyner certainly must have either managed her petition process or delegated that task to a person(s) who answered and reported to her. That process must have involved tracking and vetting Subscribing Witnesses, paid and volunteer. It is hard to imagine that such a person could unwittingly receive petition sheets from fictitious persons and assumed identities, for example the young man who apparently witnessed his sheets with crude forgeries of "Norma." Joyner therefore should be charged with at least constructive knowledge of at least a single act of the forgery and fraud that permeate her petition, a finding that requires, without more, that the Joyner Petition be invalidated.

14.    Even if Joyner could not be charged with at least constructive knowledge of the massive fraud and forgery plaguing the Joyner Petition, and regardless of the number of valid signatures to the Joyner Petition, the numerous and systemic scope of the forgeries submitted by Joyner compels the conclusion that the entire Joyner Petition is permeated with fraud and must be invalidated, as a matter of law and public policy.

---

[3] Because of the deeply troubling nature of the evidence adduced to date and the limited scope and timing of this Special Proceeding, a copy of this Verified Petition is being submitted to the Bronx County District Attorney's office for further investigation.

15.    Finally, the cumulative effect of the documented forgeries and other deficiencies reduce the Joyner Petition from the claimed 2,513 signatures to no more than 428 valid signatures, fewer than the 500 signatures required to be placed on the ballot.

16.    Accordingly, and as set forth below in greater detail, the Joyner Petition should be invalidated for the following three, independent reasons:

> (i)    Joyner must be charged with at least constructive knowledge of the fraud that plagues the Joyner Petition, and a candidate's constructive knowledge of even one act of fraud compels invalidation of that candidate's designating petition;

> (ii)    even if Joyner had no actual or constructive knowledge of the fraud, the Joyner Petition is so permeated with fraud that it must be invalidated as a matter of law and public policy; and

> (iii)    after invalidation of that portion of the Joyner Petition that is fraudulent or otherwise irregular, there remains an insufficient number of valid signatures.

17.    Petitioners therefore request that the Joyner petition be invalidated, Joyner be removed from the primary ballot as a Democratic candidate for the office of Member of the New York State Assembly for the 77th Assembly District, and that this Verified Petition be granted in its entirety.

## PARTIES AND PROCEDURAL HISTORY

**A.    The Parties**

18.    The Election Law provides that a special proceeding may be commenced by an aggrieved candidate or a person who has filed an objection.  See, e.g., Election Law § 16-102(1).

19.    Petitioner Reverend Verdell Mack ("Reverend Mack") has lived in the Bronx for 42 years, during which time she has served her community as a member of the clergy, a

6

FILED  Jul 23 2014 Bronx County Clerk

humanitarian, advocate and activist. Reverend Mack is a loving wife, devoted mother of four

children, the proud grandmother of twelve grandchildren and the great grandmother of two. She

also is a registered Democrat who resides in the Bronx and who is the aggrieved candidate

running against Joyner for the democratic nomination for the public office of Member of the

New York Assembly from the 77th Assembly District. A copy of Reverend Mack's Cover

Sheet enclosing her designating petition and of her Certificate of Acceptance are annexed hereto

as **Exhibits 1** and **2**, respectively.

20.     Petitioners Shaniqua Turner and Renee McKenize are registered democrats who

reside in the Bronx within the geographic confines of the 77th Assembly District and who filed

General Objections to the Joyner Petition.

21.     Respondent Latoya Joyner purports to be a registered Democrat who resides in

the Bronx and who is running against Reverend Mack for the democratic nomination for the

public office of Member of the New York Assembly from the 77th Assembly District. A copy

of Joyner's Cover Sheet enclosing her Joyner Petition is annexed hereto as **Exhibit 3**.

22.     The Board of Elections in New York City (the "BOE") is a governmental agency

named herein as a necessary party.

**B.     The Joyner Petition**

23.     On July 7, 2014, Joyner filed with the BOE the Joyner Petition, comprised of a

cover sheet and three bound volumes, BX1400197, BX1400198, and BX1400199. The Joyner

Petition is in the possession, custody and control of the Board of Elections in the City of New

York and will be made available at trial.[4]

---

[4] See Election Law § 3-220(6) and the duly adopted Rules of the Board of Elections in the City
of New York,

24.     The largest volume of the Joyner Petition is Volume BX1400198 ("BX198"),

which purports to contain 1,301 signatures on 95 pages collected by 34 Subscribing Witnesses.

25.     The second largest volume of the Joyner Petition, with 752 purported signatures

on 60 pages, is Volume BX1400199 ("BX199").

26.     Finally, Volume BX1400197 ("BX197") is comprised of 40 pages containing 460

purported signatures purportedly collected by 24 Subscribing Witnesses.

### C.     Petitioners' General and Specifications Of Objections To The Joyner Petition

27.     On July 13, 2014, Petitioners Turner and McKenize timely filed with the BOE a

General Objection to the Joyner Petition, a copy of which is annexed hereto as **Exhibit 4**.

28.     On July 16, 2013, Petitioners Turner and McKenize timely filed with the BOE

and served upon Joyner Specifications of Objection, a copy of which is annexed hereto as

**Exhibit 5**, together with three volumes of line-by-line objections corresponding to the three

volumes of the Joyner Petition. The Specifications of Objections sets forth with specificity

objections to 2,085 of the 2,513 purported signatures contained therein.

29.     As set forth on the line by line objections to BX197, a copy of which is annexed

hereto as **Exhibit 6**, BX197 purports to contain 460 signatures but actually contains no more

than 106 valid signatures.

30.     As set forth on the line by line objections to BX198, a copy of which is annexed

hereto as **Exhibit 7**, BX198 purports to contain 1,301 signatures in support of the Joyner

Petition but actually contains no more than 209 valid signatures.

31.     As set forth on the line by line objections to BX199, a copy of which is annexed

hereto As **Exhibit 8**, BX199 purports to contain 752 signatures but actually contains no more

than 113 valid signatures.

32.    After invalidating the fraudulent and otherwise irregular signatures, the Joyner Petition contains no more than 428 valid signatures of the 500 required.  As of the date of this Verified Petition the BOE has not yet ruled on Petitioners' objections.[5]

33.    Further, and as set forth in greater detail below, the Joyner Petition is permeated by fraud and must be invalidated in its entirety.

**RELEVANT FACTS EVIDENCING FRAUD IN THE JOYNER PETITION**

34.    The results of the Petitioners' analysis and investigation of the Joyner Petition reveal forgeries and fraud of staggering proportions.  The most significant witnesses to the Joyner Petition involve the fraudulent and perjurious use of false or misappropriated identities of Subscribing Witnesses.  Numerous other Subscribing Witnesses are implicated in executing fraudulent and perjuries Subscribing Witness Oaths, back-dating sheets, and forging innocent voters' signatures on the Joyner Petition.  The Joyner Petition contains countless other forged signatures, false affidavits and pages that bear indicia of fraud or other irregularities.[6]

**A.    The Most Significant Subscribing Witness To The Joyner Petition, Nicholas Brown, Is Demonstrably Linked To Fraud And Perjury.**

35.    The person who witnessed the most signatures for the Joyner Petition is Nicolas Brown, who purports to reside at 339 Clifton Place, Apt. 2, Brooklyn, New York.  See, e.g., BX198, pages 23, 27, 31, 32, 33, 34, 35, 36, 50, 60, 61, 63, 64, 73, 88, 89, 90, and 91 (collectively, the "Brown Sheets").

---

[5] Pursuant to the Designating Petition and Opportunity To Ballot Petition Rules For The September 9, 2014 Primary Election (the "Rules"), the BOE does not rule on issues of fraud because it considers it a matter to be decided by the Courts.  See, e.g., Rules H8.  Accordingly, the BOE does not need to render a final determination of Petitioners' objections before this proceeding can be tried and adjudicated.
[6] Petitioners reserve their right to proffer additional evidence and testimony at the trial of this Special Proceeding.

FILED  Jul 23 2014 Bronx County Clerk

36.     The BOE records confirm that there is a registered democrat by that name purportedly registered at that address.  A cursory review of Nicholas Brown's BOE signature and biographical information card ("Buff Card"), a copy of which is annexed hereto as **Exhibit 9**, indicates that the signature contained on the Brown Sheets used only initials that do not match Nicholas Brown's signature on his Buff Card.  Compare Exhibit 9 with Brown Sheets.

37.     A more detailed investigation reveals that 339 Clifton Place is a single family home in Bedford–Stuyvesant, Brooklyn that does not contain an Apartment 2.  The owner of that single-family home, who has resided there since he purchased that home, does not know any Nicholas Brown, no such person has resided at 339 Clifton since he purchased the home, and no one now residing at 339 Clifton Place had any involvement with the Joyner Petition.  See, e.g., the annexed Affidavit of Harold R. Brown, sworn to on July 14, 2014, and the accompanying copy of his deed to 339 Clifton Place, which are annexed hereto as **Exhibit 10**.

38.     Accordingly, each of the Brown Sheets contains a knowing and material falsehood to the extent that the Subscribing Witness swears under oath that "I now reside at 339 Clifton Place, Brooklyn, New York."

39.     It is possible that Nicholas Brown is fraudulently using a decade-old address on the numerous Subscribing Witness Affidavits he executed, either to avoid service of process in an Election Law proceeding or for some other reason known only to him.  It is equally plausible, and more likely, that some person(s) plucked Nicholas Brown's identity out of the voter registration records, forged his now defunct residence information and signature on 18 Subscribing Witness Oaths, and somehow had those pages bound with the Joyner Petition.

40.     In either case, whoever signed the Subscribing Witness Affidavit on the Brown sheets committed a knowing and material fraud, or perjury, or both, to hide the page after page of forged signatures contained on those sheets.

41.     The foregoing demonstrates by clear and convincing evidence that, among other remedies, all of the 258 signatures witnessed by Nicholas Brown should be invalidated on the grounds of forgery and fraud.

**B.      The Second Most Significant Subscribing Witnesses To The Joyner Petition, Norma Torres, Is A Fraudulent Identity Misappropriated By A Forger.**

42.     The person who witnessed the second most signatures for Volume BX198 of the Joyner Petition is Norma Torres, who purports to reside at 1575 Grand Concourse, no apartment specified, Bronx, and purports to have witnessed 60 signatures for the Joyner Petition.  See, e.g., BX198 pages 77, 78, 79, 80 (collectively, the "Torres Sheets").

43.     The BOE records confirm that there is a Norma Torres who is a registered democrat purportedly residing at that address.  A cursory review of Norma Torres's Buff Card, a copy of which is annexed hereto as **Exhibit 11**, indicates that the signatures contained on the Torres Sheets are obvious forgeries of Norma Torres's signature.

44.     Further, the Torres Sheets contain at least one documented and blatant forgery of an alleged signature to the Joyner Petition.  See, e.g., the Affidavit of Luz Correro, sworn to on July 17, 2014, annexed hereto as **Exhibit 12**.

45.     Finally, and most compelling, the two signatories who actually verified their signatures on the Torres Sheets specifically identified a "young man" as the person who asked them to sign the Joyner Petition and witnessed their signature, not a woman and not a woman named Norma Torres.  See, e.g., the Affidavits of Lucy Holtzman and Julissa Reyes, sworn to on July 17, 2014, annexed hereto as **Exhibits 13** and **14**, respectively.

11

FILED  Jul 23 2014 Bronx County Clerk

46.     Whoever was responsible for the forgeries contained in the Torres Sheets apparently forged Norma Torres's information and signature to avoid ever having to answer for their fraud.  Whoever accepted the Torres Sheets from a nice young man going by "Norma" and then bound those Torres Sheets into the Joyner Petition, and why such a person(s) did so, is a matter to be determined at trial.

47.     The foregoing demonstrates by clear and convincing evidence that, among other remedies, all of the 60 signatures witnessed by "Norma Torres" should be invalidated on the grounds of forgery and fraud.

**C.     The Two Most Significant Subscribing Witnesses To Volume BX197, Rosella Gregg and Margaret Tuitt, Engaged In Acts Of Forgery And Perjury.**

48.     The Subscribing Witnesses who purport to have witnessed the most signatures in Volume BX197 of the Joyner Petition are Rosella Gregg and Margaret Tuitt.

49.     Rosella Gregg purports to reside at 230 East 167th Street, Apartment 1C, Bronx and to have witnessed 45 signatures for the Joyner Petition.  See, e.g., BX197 pages 29, 31, and 32 (collectively, the "Gregg Sheets").  That information matches an entry in the BOE's database for a registered democrat.  According to her Buff Card, a copy of which is annexed hereto as **Exhibit 15**, Rosella Gregg is an 81 year-old woman who might, one would imagine, have difficulty walking to each of the 60 addresses on the Gregg Sheets.  One would imagine Ms. Gregg might have particular difficulty doing all of that walking all on a single day, May 29, 2014.  The Gregg Sheets nevertheless swear, under penalty of perjury, that Rosella Gregg walked to 60 addresses and obtained 60 signatures all on May 29, 2014.

50.     It turns out that Ms. Gregg's imagined difficulty was avoided by actual fraud.  First, the Gregg Sheets contain forged signatures.  See, e.g., the Affidavit of Harry McKenize, sworn to on July 21, 2014, a copy of which is annexed hereto as **Exhibit 16**.  Second, the Gregg

12

Sheets were not carried by Rosella Gregg but by, at least in part, Anggie (sp) Gregg, Rosella

Gregg's daughter. See, e.g., Affidavit of Andrew Pitts, sworn to on July 21, 2014, a copy of

which is annexed hereto as **Exhibit 17**.  Third, the Gregg Sheets were dated and sworn to as of

May 29, 2014 -- not coincidentally the first day petitions were allowed to be carried -- but were

actually collected no sooner than June 2014. See, e.g., id.

51.     The other most significant Subscribing witness to Volume BX197, Margaret

Tuitt, purports to have witnessed 45 signatures for the Joyner Petition. See, e.g., BX197 pages

1, 2, and 3 (collectively, the "Tuitt Sheets").  The Tuitt Sheets contain at least two demonstrable

forgeries. See, e.g., Affidavit of Nat Amankwah, sworn to on July 14, 2014 and annexed hereto

as **Exhibit 18**, attesting to the fact that the two illegible signatures attributed to his residence

were not his signature or the signature of his sister, the only other occupant of their residence.

52.     The foregoing demonstrates by clear and convincing evidence that, among other

remedies, all of the 90 signatures purportedly witnessed by Rosella Gregg and Margaret Tuitt

should be invalidated on the grounds of forgery and fraud.

**D.     The Most Significant Subscribing Witnesses To Volume BX199 Is Not A
        Registered Voter And May Be Yet Another Misappropriated Identity.**

53.     The most significant Subscribing witness to Volume BX199, Milagros Aponte,

purports to reside at 875 Longwood Avenue (apartment not specified), Bronx, and to have

witnessed 143 signatures for the Joyner Petition. See, e.g., BX197 pages 10, 11, 12, 20, 24, 29,

30, 31, 32, 33, and 34 (collectively, the "Aponte Sheets").

54.     No such person appears to be listed in the BOE's database of registered voters.

Against the backdrop of rampant Subscribing Witnesses fraud, the substantial use of persons not

registered to vote, and therefore not able to be served with process and hailed into Court for

examination, again raises the ugly specter of fraud and perjury.

FILED  Jul 23 2014 Bronx County Clerk

**E.    Other Subscribing Witnesses To The Joyner Petition
Engaged In Acts Of Forgery And Perjury.**

55.    At least one other Subscribing Witness can be proven to have engaged in forgery and perjury.  Reaz Khan, who purports to have witnessed 19 signatures for the Joyner Petition, submitted line after line of blatant, obvious forgeries.  See, e.g., BX 197 pages 12 and 13).  Not surprisingly, at least one such instance of forgery can be proven by testimonial evidence.  See, e.g., Affidavit of Denise Marte, sworn to on July 14, 2014, annexed hereto as **Exhibit 19**.

56.    In addition to the unprecedented forgeries described above and in the line-by-line objections to the Joyner Petition, the Joyner Petition is plagued by forgeries, irregularities and indicia of fraud that simply could not be investigated further before the statutory deadline to file the instant Verified Petition.

57.    For example, 78 signatures contained in Volume BX199 are purportedly witnessed by Angel Molina, residing at 974 Prospect Avenue, Bronx.  See, e.g., BX199 pages 1, 14, 21, 27, 35, and 37 (collectively, the "Molina Sheets").  That identity matches an entry in the BOE's database for a registered democrat, but that voter's signature does not remotely resemble the signature on the Molina Sheets.  Compare Molina Sheets with Buff Card for Angel Molina, a copy of which is annexed hereto as **Exhibit 20**.  It appears, therefore, that Mr. Molina, like Nicholas Brown and Norma Torres, may have had his identity misappropriated as part of the fraudulent scheme that is the Joyner Petition.

58.    As a further example of the fraud and irregularity permeating the Joyner Petition, 35 signatures contained in Volume BX199 are purportedly witnessed by Elsie Deans, residing at 1110 Teller Avenue, Apartment 5C, Bronx.  See, e.g., BX199 pages 55, 56, and 58 (collectively, the "Deans Sheets").  That identity matches an entry in the BOE's database for a registered democrat, but the person who completed the Subscribing Witness Oath wrote the

14

incorrect address (1100 Teller instead of 1110 Teller) on two of those sheet and almost did the

same on the third, where an un-initialed alteration to the Subscribing Witness Oath corrected

Ms. Deans' address.  That is an indicia of fraud, because people do not often incorrectly write

their own address, again raising the possibility that yet another voter's identity was

misappropriated in connection with the fraudulent Joyner Petition.

59.    The Joyner Petition also contains numerous other indicia of fraud, such as

misspellings and inversions of the names of purported signatories, and alterations of

Subscribing Witness Oaths.  See, e.g., BX199, page 45(8) (first and last names inverted);  BX

199 page 13(8, 11, 14) (voters' names misspelled); BX199 page 42(6,8) (same); BX199 pages

52 and 60 (pages not witnessed).

60.    Indeed, as set forth in greater detail below, the entire Joyner Petition is permeated

with fraud and must be invalidated.

## ARGUMENT

### I.    Controlling Legal Standard

61.    There are three, independent reasons to invalidate the Joyner Petition.  First, the

Joyner Petition may be invalidated if there is a finding that the candidate has participated in, or

is chargeable with knowledge of, fraud in procuring signatures for a designating petition, even if

there is a sufficient number of valid signatures independent of those fraudulently procured.  See,

e.g., Matter of Drace v. Sayegh, 43 A.D.3d 481, 482, 844 N.Y.S.2d 314 (2d Dep't 2007);

Leonard v. Pradhan, 286 A.D.2d 459, 729 N.Y.S.2d 523, 523-524 (2d Dep't 2001) and Matter of

MacDougall v Board of Elections of City of N.Y., 133 A.D.2d 198, 199, 518 N.Y.S.2d 840 (2d

Dep't 1987); see also Election Law § 16-102(3).

62.      Second, where the limited investigation afforded by the Election Law uncovers

numerous instances of misrepresentations, the Court "may well indulge in the presumption that

there were many other misrepresentations and irregularities which time did not permit to be

uncovered" and invalidate the entire Joyner Petition as permeated with fraud.  Buchanan v.

Espada, 230 A.D.2d 676, 677, 646 N.Y.S.2d 680, 681-682 (1st Dep't 1996), quoting Bloom v

Power, 21 Misc. 2d 885, 892, 193 N.Y.S.2d 697 (N.Y. Sup. Ct. 1959) aff'd 9 A.D.2d 626, 191

N.Y.S.2d 152 (2d Dep't 1959), aff'd 6 N.Y.2d 1001, 192 N.Y.S.2d 162 (1959). See also, Matter

of Ferraro v McNab, 60 N.Y.2d 601, 603, 467 N.Y.S.2d 193 (1983); Matter of Drace, 43

A.D.3d 481, 482, 844 N.Y.S.2d 314 (2d Dep't 2007); Matter of Fonvil v Michel, 308 A.D.2d

424, 425, 764 N.Y.S.2d 190 (2d Dep't 2003); and Matter of Ragusa v Roper, 286 A.D.2d 516,

516-517, 729 N.Y.S.2d 647 (2d Dep't 2001).

63.      Third, the Joyner Petition may be invalidated if, after invalidation of a portion of

said petition based upon fraud or irregularity, there remains an insufficient number of valid

signatures. See, e.g., Harfmann v. Sachs, 138 A.D.2d 550, 550-551, 526 N.Y.S.2d 41 (2d Dep't

1988).

64.      Here, Petitioners can demonstrate clear and convincing evidence sufficient to

meet all three of these independent legal standards.  As set forth above in detail, Ms. Joyner

must be charged with at least constructive knowledge of the fraud that permeates her

designating petition.  Even if Joyner had no such actual or constructive knowledge, Petitioners

can demonstrate so many instances of forgery and fraud pervading the Joyner Petition that this

Court should presume that the entire Joyner Petition is permeated with fraud and must be

invalidated without further inquiry. Finally, even if the Court invalidates only the fraudulent and

16

otherwise irregular signatures, the Joyner Petition contains an insufficient number of signatures for Joyner to qualify to be placed on the ballot.

65.     Accordingly, the Verified Petition should be granted in its entirety and the Joyner Petition should be invalidated.

**II.     The Court Should Invalidate The Joyner Petition Because Joyner Is Charged With Actual Or Constructive Knowledge Of At Least One Fraudulent Act.**

66.     It is well settled that "a designating petition may be invalidated when there is a finding that the candidate has participated in or is chargeable with knowledge of fraud in procuring signatures for a designating petition, even if there is a sufficient number of valid signatures independent of those fraudulently procured." Matter of Drace, 43 A.D.3d at 482, 844 N.Y.S.2d 314 (2d Dep't 2007); see also, e.g., Matter of Leonard, 286 A.D.2d 459, 729 N.Y.S.2d 523; Matter of MacDougall, 133 A.D.2d at 199, 518 N.Y.S.2d at 840.

67.     In light of the massive and pervasive scope of the forgeries and fraud described herein, Joyner must as a matter of law be charged with constructive knowledge of that fraud.

68.     The timely submission of a designating petition is a necessary prerequisite to getting on the ballot.  Certainly Joyner either supervised the petition process or delegated that task to some person(s) who answered to or reported to Joyner.

69.     The Joyner Petition's use of fraudulent Subscribing Witness Oaths provides a link to Joyner because such a scheme clearly implicates persons with responsibility or authority for the Joyner petition.  It seems implausible that a person with responsibility for the Joyner Petition could unknowingly collect forged sheets from a person using a misappropriated identity.  Put differently, it is implausible that one could one unwittingly collect petition sheets from a nice young man whose sheets are witnessed by "Norma" and not be placed on actual or constructive notice of fraud.

17

70.    The most likely motivation of this forgery is to Petition Pad as an economic disincentive to anyone seriously vetting the Joyner Petition.  That motivation can be ascribed only to Joyner, or the person(s) responsible for her petition.

71.    The only alternative explanation is that Joyner intentionally buried her head in the sand to avoid confronting the obvious fraud plaguing the Joyner Petition, but it is well settled that "a candidate cannot employ deliberate inattention as a device to insulate himself from the fraud and irregularity permeating his designating petition" or to preclude a finding that by action or omission the candidate could be said responsible for the fraud and irregularity.  See, e.g., Buchanan v. Espada, 230 A.D.2d 679, 680, 646 N.Y.S.2d 683 (1st Dep't 1996), citing Matter of Proskin v May, 40 N.Y.2d 829, 830.  Similarly, the Court of Appeals has identified a candidate's failure to call subscribing witnesses under their control as a factor in granting an application to invalidate petitions tainted by those subscribing witness.  See, e.g., See, e.g., Haskell v. Gargiulo, 51 N.Y.2d 747, 748, 432 N.Y.S.2d 359 (1980) .

72.    Accordingly, the Joyner Petition should be invalidated because Joyner is charged with at least constructive knowledge of the fraud that permeates her petition.

### III.    In the Alternative, The Court Should Invalidate The Joyner Petition Because It Is Permeated By Fraud And Irregularity.

73.    There is ample precedent to invalidate the Joyner Petition as permeated with fraud.  In Proskin v. May, for example, the Court of Appeals affirmed the invalidation of a designating petition, even where the candidate had no actual or constructive knowledge of the fraud and irregularities and where the designating petition had sufficient signatures, because a finding of fraud in connection with 116 of 220 signatures supported the conclusion that "because of its magnitude, fraud and irregularity so 'permeated' the petition as a whole as to call for its invalidation." 40 N.Y.2d 829, 830, 387 N.Y.S.2d 564 (1976) .

74.    In <u>Mercorella v. Benza</u>, the Supreme Court invalidated a designating petition as permeated with fraud where the BOE invalidated 4,220 of the petition's 10,831 signatures; the First Department reversed, conceding that "[w]hile the workers obtaining the signatures might have made a more intensive questioning of the proposed signer of the petition, as a practical matter they were in the main bound to rest on the assurances by the proposed signer that such person was an enrolled Democrat within the prescribed district." 49 A.D.2d 705, 705, 372 N.Y.S.2d 83 (1st Dep't 1975). The Court of Appeals reinstated the Supreme Court's order invalidating the designating petition and holding the "'irregularities, improprieties and fraudulent practices' which permeated the designating petition to permit a conclusion as a factual matter that there was permeation." <u>Mercorella v. Benza</u>, 37 N.Y.2d 792, 793, 375 N.Y.S.2d 105 (1975).

75.    In <u>Flower v. D'Apice</u>, the Appellate Division affirmed invalidation of a designating petition as permeated with fraud based upon the following facts: (i) two persons testified that, although their names appear as signatories to the petition, they had never signed it; (ii) there appeared on the petition the purported signature of a person who was deceased at the time the signature was allegedly obtained; (iii) there appeared the signature of a person whose mother testified he had been in California at the time of the alleged signing; (iv) a subscribing witnesses failed to ask the signatories to identify themselves as the persons whose names they were signing; and (v) another subscribing witnesses allowed another person to complete the Subscribing Witness Oaths for pages to which she had attested at a later date. 104 A.D.2d 578, 578-579, 479 N.Y.S.2d 281 (2d Dep't 1984).

76.    Here, the evidence set forth in this Verified Petition establishes fraud and forgery as systemic and abundant as in the case set forth above. Eight people have submitted sworn

19

statements implicating the most significant Subscribing Witnesses to the Joyner Petition in an apparently systemic pattern of forgery, perjury and fraud.  That fraud involves not only numerous instances of forged signatures but also at least twenty-five Joyner Petition sheets that contain demonstrably forged Subscribing Witness Oaths, including the apparent misappropriation of voters' identities and forged signatures purporting to witness fraudulent petition sheets.  Petitioners also have established that the Joyner Petition is riddled with fraudulent back-dating of Joyner Petition sheets, presumably to gain an improper advantage of priority of signing, and other improper irregularities.

77.    Indeed, the testimony adduced to date demonstrably proves that thirty sheets containing 427 purported signatures, or 16% of the Joyner Petition, are a complete fraud riddled with perjury and forgery.   Another 256 signatures and are linked to numerous indicia of fraud and are almost certainly fraudulent and perjurious.

78.    In other words, the limited investigation to date definitively proves that 16% of the Joyner Petition is fraudulent and establishes by clear and credible evidence that at least 25% of the Joyner Petition is fraudulent.  Scores of other signatures are invalid because of alterations to signatures, dates, addresses and the Signing Witness Statement of the Joyner Petition Sheets.

79.    The scope of the forgery proven to date casts doubt on the validity of any portion of the Joyner Petition because it demonstrates that the manner in which the Joyner Petition was prepared, assembled and bound was deeply flawed at best and a criminal conspiracy at worst.

**IV.    In The Alternative, The Court Should Invalidate The
Joyner Petition Because it Does Not Contain Sufficient Valid Signatures.**

80.    Even if the Court finds that the entire Joyner Petition is not permeated with fraud, the Court is permitted to invalidate only those signatures directly tainted by fraud and irregularity.  As set forth above and in the line-by-line objections annexed hereto as Exhibits 6,

FILED  Jul 23 2014 Bronx County Clerk

7, and 8, and in the preceding paragraphs of this Verified Petition, doing so would effectively invalidate the Joyner Petition because it does not contains sufficient valid signatures without the invalidated signatures. Accordingly, the Joyner Petition should be invalidated because it fails to meet the signature requirements provided by the Election Law.

## CONCLUSION

81.    For all of the reasons set forth above, and in the exhibits hereto and in the accompanying affidavits, the Verified Petition should be granted in all respects, the petition designating Joyner as a democratic candidate for the office of Member of the New York State Assembly for the 77th Assembly District should be invalidated, Joyner should be removed from the ballot for the September 9, 2014 primary election, and Petitioners should be granted such other and further relief as is just and proper.

Dated: Bronx, New York
      July 22, 2014

                  LAW OFFICE OF DONALD R. DUNN

                  By:_____
                      Donald R. Dunn, Jr.
                  441 East 139th Street
                  Bronx, New York 10454
                  347-270-1863 (Office)
                  480-287-8849 (Fax)
                  Donald@drdunnlaw.com

                  *Attorney for Petitioners*

FILED Jul 23 2014 Bronx County Clerk

VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF BRONX        )

Verdell Mack, being duly sworn, deposes and says:

I am one of the petitioners in the above-captioned special proceeding to invalidate the designating petition of Latoya Joyner as a democratic candidate for the office of Member of the New York State Assembly for the 77th Assembly District. I have read the foregoing Verified Petition and know the contents thereof and the same is true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to matters I believe them to be true.

<br>

_____
Verdell Mack

Sworn to before me this
22nd day of July, 2014.

_____
Notary Public

DONALD R. DUNN, JR.
Notary Public, State of New York
#02DU6192192
Qualified in Bronx County
Commission Expires August 25, 20 16

22

FILED  Jul 23 2014 Bronx County Clerk

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REVEREND VERDELL MACK, SHANIQUA
TURNER, AND RENEE MCKENIZE,

       Petitioners,

   -- v --

LATOYA JOYNER and THE BOARD OF
ELECTIONS IN THE CITY OF NEW YORK,

       Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. _____

**AFFIRMATION OF IMMEDIACY
AND IN SUPPORT OF PETITIONER'S
APPLICATION TO INVALIDATE
THE NOMINATING PETITION
OF LATOYA JOYNER, PURSUANT
TO ELECTION LAW § 16-102**

STATE OF NEW YORK  )
        )ss:
COUNTY OF BRONX  )

   I, **Donald R. Dunn, Jr.**, an attorney duly admitted to practice before the Courts of the

State of New York, hereby affirm the following under penalty of perjury:

   1.  I am the attorney for Petitioners in this proceeding and I submit this Affirmation

in support of the Verified Petition, pursuant to Election Law § 16-102, to invalidate the

designating petition of Latoya Joyner ("Joyner") as a democratic candidate for the office of

Member of the New York State Assembly for the 77th Assembly District (the "Joyner

Petition").

   2.  This proceeding is brought by Order to Show Cause because of the urgent need to

effect service of the Verified Petition on or before Thursday, July 24, 2014 and because of the

directive of Election Law § 16-116.

   3.  I did not provide respondents notice of the instant application because no interim

relief is sought.

   4.  No prior application has been made for this or related relief to this or any other

Court.

Dated: Bronx, New York
   July 22, 2014

          _____
          Donald R. Dunn, Jr.